# BEFORE THE UNITED STATES JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

In re: TARGET CORPORATION   MDL No. 2522
CUSTOMER DATA SECURITY
BREACH LITIGATION                      /

# PLAINTIFFS THOMAS DOROBIALA'S AND ROBIN WESTMORELAND'S INTERESTED PARTY RESPONSE IN PARTIAL OPPOSITION TO MOTION FOR CONSOLIDATION AND TRANSFER PURSUANT TO 28 U.S.C. §1407 FOR CONSOLIDATED PRETRIAL PROCEEDINGS

Plaintiffs Thomas Dorobiala and Robin Westmoreland, the named plaintiffs in *Dorobiala et al. v. Target Corporation*, 2:14-CV-00294-AG (JPRx) (C.D. Cal., filed Jan. 13, 2014), submit this interested party response to the pending motions for transfer and pretrial coordination or consolidation pursuant to 28 U.S.C. §1407. The related actions should be coordinated for pretrial proceedings, but should be transferred to the Central District of California.

I.  INTRODUCTION

On December 19, 2013, Target announced that thieves had breached its security systems and stolen the debit and credit card information of 40 million Target customer accounts. Target later announced that an additional 70 million people had their phone numbers, email addresses, and mailing addresses stolen in the breach. The Secret Service, the Department of Justice, and state attorneys general have announced that they are investigating the breach.[1] Congress has also requested records from Target and has held hearings regarding the breach.[2] On December 19, 2013 Plaintiff Klein filed her case in the Central District of California. There are a total of 6 cases pending in the Central District of California before Judge Guilford, including Plaintiffs Dorobiala's and Westmoreland's case. There are already 85 cases against Target filed across the country, dispersed throughout over 30 different district courts.

The Plaintiffs have filed motions and responses arguing that the pending cases should be transferred to the Central District of California, the Northern District of California, the Southern District of California, the Northern District of Illinois, the District of Utah, the Southern District

---

[1] Alina Selyukh and Dhanya Skariachan, *Congress Turns up Heat on Target with Hearings, Document Request*, Reuters (Jan. 23, 2014), http://www.reuters.com/article/2014/01/24/us-target-databreach-senatehearing-idUSBREA0N04D20140124; Sara Germano and Robin Sidel, *Target Discusses Breach with State Attorneys,* Wall Street Journal (Dec. 23, 2013), http://online.wsj.com/news/articles/SB10001424052702304020704579276901918248632

[2] *Id.*

of Illinois, the Middle District of Louisiana, the Eastern District of New York, the District of Colorado, the Eastern District of Louisiana, the District of Minnesota, and the Southern District of Florida. Target has filed a response arguing that the cases should be transferred to Minnesota.

The Central District of California is the most appropriate venue for these cases because it has very favorable docket conditions and judges who are experienced with complex litigation and MDLs. Also, the convenience of the witnesses and parties would best be served by transferring the cases to the Central District of California since many of the attorneys in the case (including defense counsel), and the largest percentage of putative class members reside in California. Additionally, the cases should be transferred to the Central District of California because the Ninth Circuit has the most well developed law on privacy and data breaches.

## II. ARGUMENT

### A. The Related Target Cases Meet the Panel's Criteria for Transfer

The Panel may transfer and coordinate two or more civil cases for pretrial proceedings if the panel finds that the cases "involv[e] one or more common questions of fact," transferring the cases would serve "the convenience of parties and witnesses," and that transferring the cases will "promote the just and efficient conduct of [the] actions." 28 U.S.C. §1407(a). As detailed in the pending motions for transfer and the responses to the motions, the related class action cases against Target easily meet these criteria and should be transferred and coordinated for pretrial proceedings.

### B. The Central District of California has Ideal Docket Conditions for a MDL of this Size and Scope

One of the most important questions to decide in selecting a venue in large and complex MDLs is whether the proposed transferee district has the capacity to handle the transferred cases. *See In re Merrill Lynch & Co. Inc. Research Reports Litigation*, 223 F.Supp.2d 1388, 1390

(J.P.M.L. 2002) (finding that the cases should be transferred to the Southern District of New York because it had the necessary resources to devote substantial time and effort to pretrial matters to an MDL with a complex docket). The Central District of California is the most appropriate venue because it has the most favorable docket conditions to handle the Target cases, which undoubtedly will involve complex legal and factual questions, and involve many parties and attorneys. In just a little over two months, victims of Target's wrongful conduct have filed 85 related cases. The putative class is potentially quite large since 110 million Target customers were affected by the data breach. The cases involve complex technical questions into how exactly the data breach occurred. The legal issues are also complex and involve many different state data breach notification statutes and consumer protection statutes.

The Central District of California has favorable docket conditions, and unlike other proposed jurisdictions, would not be overburdened by accepting a complicated MDL that involves a large number of parties and witnesses. Cases in the Central District of California average 5.9 months from filing to disposition. Ex. A. In fact, the Central District of California has the third fastest time from filing to disposition in the nation (and the fastest time in the 9th Circuit). *Id.* The Central District of California also does not have a backlog of older cases, like some proposed transfer districts do. In the Central District of California only 5.6% of civil cases are over three years old. *Id.* In contrast, 16.3% of cases in Minnesota are over three years old. *Id.* The District of Minnesota was number 83 out of 94 federal districts for percentage of cases pending over three years. *Id.*

The Central District of California also has the capacity to take on an MDL of this size because it has a low number of pending cases per judge. *Id.* There are 473 cases pending per judge in the Central District of California. *Id.* There are 575 cases pending per judge in the

District of Minnesota.  *Id.*  Defendant Target states that the Central District of California has a heavier caseload than the District of Minnesota because 10,613 cases are pending in the Central District of California, as opposed to 4,040 civil matters in the District of Minnesota.  Target Response at 9. [Dkt. No. 90.].  Those raw numbers don't tell the whole story, though, since the Central District of California has 28 judgeships while District of Minnesota only has 7 judgeships.  *Id.*  Given that more populous districts have more judges, the more relevant number to evaluate the caseloads of judges is the number of pending cases per judge, not the total number of cases in the district.  The Central District of California's docket conditions are ideal for handling a large MDL like Target because the Central District of California quickly and efficiently resolves cases, and does not have a backlog of pending cases.

      **C.**      **The Southern Division (Orange County) of the Central District of California has Handled Complex MDLs and has Experienced and Skilled Jurists**

The Southern Division (Orange County) of the Central District of California has demonstrated in the past that it can handle extremely large and complicated MDLs.  Recently, the Panel transferred 420 cases against Toyota involving Toyota cars' unintended acceleration to Judge Selna, who sits in the Southern Division of the Central District of California.  *In Re: Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.,* 704 F. Supp. 2d 1379 (J.P.M .L. 2010).[3]  The Toyota case was complicated in that there was a federal criminal investigation, a federal regulatory investigation, personal injury claims, and consumer claims.[4]  The Target cases are similarly complicated in that the Secret Service, and state

---

[3] Judicial Panel on Multidistrict Litigation, *Pending MDL Dockets by District, available at* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-January-15-2014.pdf (last visited Feb. 21. 2014) (listing number of actions in the Toyota MDL).

[4] Jerry Hirsch, *Toyota May Pay $1 Billion to Settle Federal Criminal Investigation*, L.A. Times (Feb. 10, 2014), http://touch.latimes.com/#section/-1/article/p2p-79251045/

attorneys general have investigated the data breach, and Congress has held hearings regarding the breach.  It is expected that that the pretrial proceedings in the Target cases will be very complicated and time consuming.  Similarly, the pretrial proceedings in the Toyota case were extremely complicated and labor intensive.  Despite the enormous amount of parties involved and the incredibly complicated issues in the case, the Toyota cases resulted in a $1.6 billion settlement to 22 million class members. *In re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation,* No. 8:10ML 02151, 2013 WL 3224585 at *10 (C.D. Cal. 2013).[5]  The Central District of California's admirable job in presiding over the Rule 23 aspect of the Toyota litigation demonstrates that the Central District of California is the best venue to handle the Target MDL because the Target cases will involve many parties, and will be complicated and time consuming.

The Central District of California cases have been consolidated under Judge Guilford, who, like Judge Selna, sits in Orange County, and would be an excellent judge to preside over the MDL if the cases were transferred to him. Judge Guilford has already taken a proactive role in managing the six Target cases that are pending before him.  Judge Guilford has scheduled a status conference in the six Target cases that are proceeding before him for February 24, 2014 and has laid out a detailed agenda of topics to be covered at the hearing, including an overview of the case, the status of the MDL, whether to grant a stay pending the decision of the JPML, and discovery issues and scheduling.  Ex. B.

---

[5] All the cases for purely economic damages in the Toyota MDL have settled.  A significant number of the personal injury cases have settled, with the remainder of the cases are set to be negotiated in February and March.  *See* Jacyln Trop and Ben Protess, *Toyota in Talks on Final Settlements over Car Recalls,* New York Times (Feb. 9, 2014), http://www.nytimes.com/2014/02/10/business/toyota-in-talks-on-final-settlements-over-car-recalls.html

Judge Guilford has nearly 8 years of experience as a federal judge and was in private practice for 31 years before becoming a judge.[6] Judge Guilford also has experience presiding over MDL litigation. He currently presides over *In Re: DirecTV, Inc., Early Cancellation Fee Marketing and Sales Practices Litigation*. He also presided over the MDL case, *In Re: Land Rover LR3 Tire Wear Products Liability Litigation*. Notably, the *In Re Land Rover* MDL recently closed in August of 2013.[7] Judge Guilford would also be an excellent judge to preside over the Target cases because he has extensive experience in class action cases, and has issued orders on 40 class certification motions. Ex. C. Judge Guilford also has particular expertise in civil procedure, and is a Contributing Editor of The Rutter Group's Federal Civil Procedure Before Trial treatise.[8]

### D. The Central District of California would serve the Convenience of the Parties and Witnesses

The cases should also be transferred to the Central District of California for the convenience of the parties. Many counsel for the parties reside in California or have agreed that the Central District of California would be a convenient forum. Defendant Target's lead attorneys are located in the Los Angeles and San Francisco offices of Morrison & Foerster. A large number of plaintiffs' attorneys also are located in California. A total of 6 cases against Target have been filed in the Central District of California, and there are 18 total related cases filed in California district courts—over 20% of the total related cases. Additionally, plaintiffs'

---

[6] University of California, Irvine, School of Law, *Hon. Andrew J. Guilford Profile, available at* http://www.law.uci.edu/faculty/lecturers/guilford/ (last visited Feb. 21,2014)

[7] Judicial Panel on Multidistrict Litigation, *Recently Terminated MDLs, available at* http://www.jpml.uscourts.gov/sites/jpml/files/Recently_Terminated%20MDLs-1-1-2013_to_1-15-2014.pdf (last visited Feb. 21, 2014)

[8] University of California, Irvine, School of Law, *Hon. Andrew J. Guilford Profile, available at* http://www.law.uci.edu/faculty/lecturers/guilford/ (last visited Feb. 21,2014)

attorneys representing 28 different cases filed a response agreeing that the Central District of California would be a convenient venue for the MDL. Consolidated Plaintiffs' Brief at 1-2. [Dkt. No. 87.]. The consolidated brief supported transfer to the Central District of California, although the plaintiffs stated that their first choice was the Northern District of Illinois. *Id.* The Southern Division (Orange County) of the Central District of California is also a convenient location for counsel and attorneys to attend hearings and depositions, irrespective of the Defendant's business location. *See, e.g., In Re: Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.,* 704 F. Supp. 2d 1379, 1382 (J.P.M.L. 2010) (Los Angeles County based defendant)*; In re QWest Communications Corp. Payphone Service Providers Compensation Litigation*, 219 F.Supp.2d 1356, 1357 (J.P.M.L. 2002) (Denver based defendant); and *In re: CitiMortgage, Inc., Home Affordable Modification Program (HAMP) Contract Litigation*, 816 F.Supp.2d 1375, 1376 (J.P.M.L. 2011) (Missouri and New York based defendant).

The convenience of the witnesses would also be served by transferring the cases to the Central District of California because California has the largest number of putative class members. Putative class members are potential witnesses, and the Panel stated that in class action cases it considers where "the largest number of putative class members are located" in deciding where cases should be transferred. *In re Delta Air Lines, Inc.,* 170 F. Supp. 2d 1359, 1360 (J.P.M.L. 2001); *See also In re Credit Default Swaps Antitrust Litigation*, MDL No. 2476, 2013 WL 5703211 (J.P.M.L. October 16, 2013) (finding that the cases should be transferred to the Southern District of New York because a "significant number of members of the putative classes" likely reside there.). There are more Target stores in California than any other state.

There are 257 Target stores in California, but only 75 Target stores in Minnesota.  Ex. D.  California Target stores also have the most sales compared to Target stores in other states.  *Id.*

Furthermore, the convenience of the parties and witnesses would not be served by transferring the cases to Minnesota.  Although some witnesses will be located at Target's Minnesota headquarters, discovery into the cause of the data breach will likely involve many witnesses outside of Target who are located across the country.  Reporter Brian Krebs announced that the Target data breach appears to have been caused when hackers broke into Target's payment system through the vendor credentials of an air conditioning company called Fazio Mechanical Services, which is based in Pennsylvania.[9]  It is likely that Fazio will be an important witness in this case.  Additionally, many outside companies have been investigating the technical cause of the breach.  A Virginia-based security firm called Mandiant (which is owned by Milpitas, CA company FireEye) has been hired by Target to investigate the breach.[10]  ISight, a Dallas security firm, has been working with the secret service on investigating the Target data breach, and released a report on the data breach.[11]  Additionally, the Los Angeles based security firm IntelCrawler also released reports on the source of the Target breach, based

---

[9] Brian Krebs, *Target Hackers Broke in via HVAC Company*, Krebs on Security (Feb. 5, 2014), http://krebsonsecurity.com/2014/02/target-hackers-broke-in-via-hvac-company/

[10] Rachel Abrams, *Target's Woes May be a Boon for Security Firms*, New York Times (January 13, 2014), http://dealbook.nytimes.com/2014/01/13/targets-woes-may-be-a-boon-for-security-firms/?_php=true&_type=blogs&_r=0;
Mandiant, *FireEye Announces Acquisition of Mandiant*
https://www.mandiant.com/news/release/fireeye-announces-acquisition-of-mandiant/ (last visited Feb. 21, 2014)

[11] Charles Levinson and Danny Yadron, *Card-Theft Software Grew in Internet's Dark Alleys*, Wall Street Journal (Jan. 21, 2014),
http://online.wsj.com/news/articles/SB10001424052702304027204579335121871310960

on its independent research.[12] Furthermore, the case involves electronic data security, so undoubtedly the vast majority (if not all) relevant documents are stored electronically, and could be accessed anywhere.

### E. The Ninth Circuit has the most Experience in Privacy and Data Breach Laws

The Central District of California is also an appropriate district to transfer the cases because the judges and attorneys with the most experience in data breach and privacy law are concentrated in the Ninth Circuit, and in California specifically. In 2003, California was the very first state in the nation to pass a data breach notification law, so there have been many data breach cases in California.[13] Additionally, the 9th Circuit has been the center of privacy and data breach litigation. Many of the current MDLs regarding privacy and data breaches are pending in the 9th Circuit. For example, *In re Sony Gaming Networks and Customer Data Breach Security Breach Litigation*, MDL 2314 is currently pending in the Southern District of California.[14] Additionally, *In re Facebook Internet Tracking Litig.*, MDL 2314, *In Re Carrier IQ, Inc., Consumer Privacy Litigation*, MDL 2330, *In Re: Google Inc. Android Consumer Privacy Litigation*, MDL 2264, and *In Re: Google Inc. Gmail Litigation*, MDL 2430 all involve consumer privacy issues and are currently pending in the Northern District of California. *Id.*

---

[12] Jeremy Kirk, *Two Coders Closely Tied to Target Related Malware,* Computerworld (Jan. 20, 2014), https://www.computerworld.com/s/article/9245568/Two_coders_closely_tied_to_Target_related_malware?taxonomyId=82&pageNumber=1

[13] Cal. Civ. Code § 1798.82; California Attorney General, *California Attorney General Data Breach Report of 2012*, at page i, http://www.oag.ca.gov/sites/all/files/agweb/pdfs/privacy/2012data_breach_rpt.pdf? (last visited Feb. 21, 2014) (stating that California was the first in the nation to pass a data breach notification statute).

[14] Judicial Panel on Multidistrict Litigation, *Pending MDL Dockets by District, available at* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-January-15-2014.pdf (last visited Feb. 21. 2014)

Also, *In re Zappos.com, Inc., Customer Data Security Breach Litigation*, MDL 2357 is pending in the Ninth Circuit as well, in the District of Nevada. *Id.* Given the fact that most data breach litigation has developed in the Ninth Circuit, and in California specifically, the Central District of California is the most appropriate venue choice.

## III. CONCLUSION

Overall, the Central District of California is the best venue for the Target cases. It has favorable docket conditions and experienced judges. It also would be convenient to the parties and witnesses. Additionally, the cases should be transferred to the Central District of California because the Ninth Circuit, and California specifically, has the most well developed law on data breaches.

Dated: February 21, 2014                             /s/ Daniel C. Girard

Daniel C. Girard
dcg@girardgibbs.com
Eric H. Gibbs
ehg@girardgibbs.com
Matthew B. George
mbg@girardgibbs.com
Jennifer L. McIntosh
jlm@girardgibbs.com
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94104
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Todd D. Muhlstock
TMuhlstock@BAKERSANDERS.COM
**BAKER SANDERS LLC**
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Telephone: (516) 741-4799, ext. 1226
Facsimile: (516) 741-3777

Attorneys for Plaintiffs Dorobiala,
Westmoreland, and the Putative Class